NEILSON ET AL v. THE IOWA EASTERN RAILWAY CO. ET AL.

I. **Mechanic's Lien**: PRIORITY OF: MORTGAGE. A mechanic's lien attaches from the commencement of the building, and takes precedence over a mortgage executed after that time, although the particular work for which the lien is claimed was not commenced until after the execution of the mortgage.

*Argument 1.* The language of the Revision indicates a change in the legislative intent from that embodied in the Code of 1851, under which the mortgage took priority over the lien for any particular work commenced after its execution.

*Argument 2.* The word "improvements" in the statute comprehends the entire erection, and is not limited to the constituent parts thereof.

*Argument 3.* It is not desirable that the execution of a mortgage upon the land, upon which a building or other improvement is in process of construction, should be permitted to arrest the work and prevent its completion.

*Argument 4.* The case of *Getchell & Tichenor v. Allen*, 34 Iowa, 559, is not in conflict with this conclusion, but agrees with it in holding that an improvement is not simply a betterment, but is some independent erection.

*Appeal from Clayton District Court.*

WEDNESDAY, SEPTEMBER 20.

THE plaintiffs claim of the Iowa Eastern Railway Company $2,180.82, on account of ties furnished the company for the construction of its road, and ask that a lien therefor may be established. The intervenors allege that they are the holders of bonds of the company secured by a mortgage upon the road, and claim that the mortgage is entitled to priority over the lien of the plaintiffs. Other facts are stated in the opinion. The District Court rendered judgment against the company for the amount claimed, and established a lien therefor against the road, but made it subject and inferior to the lien of the intervenors. Plaintiffs appeal.

*L. Bulis, Fouke & Lyon, Hall & Baldwin*, and *N. M. Hubbard*, for appellant.

*L. O. Hatch, J. O. Crosby, W. B. Fairfield, S. Murdock*, and *T. Updegraff*, for appellee.

ADAMS, J.—The road in question was first owned by a company called the Cassville, Milwaukee & Montana Railway Company, which was incorporated May 22, 1871. The intervenors in this action subscribed to the stock of that company. The defendant, the Iowa Eastern Railway Company, was incorporated February 9, 1872. March 23, 1872, the former company conveyed the road to the latter in consideration, among other things, that the latter would pay the debts of the former and execute its mortgage bonds to the intervenors in payment of their claims for subscriptions. February 16, 1872, the latter company executed its mortgage upon the road to secure said bonds, which mortgage was filed for record March 6, 1872. The bonds were executed later. At the time the mortgage was executed sixteen miles of the road had been graded. The ties in question were furnished in April and May, 1872. The statement for a lien was filed in July, 1872.

This case is before us upon a rehearing. Having reached a conclusion different from that reached before, it is proper that we should say that the only points relied upon by the appellant when the case was first submitted, were the following:

1. That the mortgage created no lien at the time it was recorded, it appearing that the bonds were not executed until afterwards.

2. That a mortgage in covering after acquired property attaches itself to the property in the condition only in which it comes into the hands of the mortgagor, and that whatever interest the mortgagee acquires is subject to the lien charges and incumbrances then existing upon it.

3. That the mechanic's lien should be enforced against the ties, etc. as a paramount lien, instead of the road itself.

These propositions were determined against the appellants.

In their re-argument they take the ground that the lien should be enforced as a paramount lien against the road itself. This question we now proceed to determine for the first time.

The statute upon which the plaintiffs rely is section 1853 of the Revision. It provides in substance that a mechanic's lien shall have priority over a mortgage executed upon the

land and the building or improvement after the commencement of the building or improvement.

It is claimed by the plaintiffs that the intervenors' mortgage was executed after the commencement of the improvement. It is claimed by the intervenors that it was executed before. The fact is, the mortgage was executed after the road was commenced but before the ties were furnished. We have only to determine, then, what is the "improvement" within the meaning of the statute. If it is the road, the mechanic's lien has priority. If it is the ties, the mortgage has priority.

Where a statute is superseded by another statute, the meaning of the latter may sometimes be determined by reference to the former. Section 981 of the Code of 1851, was superseded by the said section 1853 of the Revision. We will compare the two statutes. The former provided that the mechanic should have a "lien upon the land, including the building * * *, against all except incumbrancers by judgment rendered and by instrument recorded before commencement of the work or the furnishing of the materials."

In *Monroe v. West*, 12 Iowa, 121, it was held that under this statute the mechanic's lien dates from the day he commences work or furnishes material under his contract. If the mortgage was executed before the commencement of the work, or furnishing of the material, for which the lien is claimed, the mortgage has priority over the lien even though the building was commenced before the mortgage was executed. A person taking a mortgage upon a partially erected building had only to inquire into and take notice of contracts for work or materials which had been at least partially performed. With what might be necessary to complete the building he was not concerned.

Such was the law from 1851 to 1860. By section 1853 of the Revision, the mechanic's lien is made to attach from the commencement of "the building, erection or other improvement." The language of this statute differs materially from the former. The question in this case is: does it mean the same thing? We are of the opinion that it does not. If the mechanic's lien is to attach only from the commencement of

the work for which it is claimed, why should language be abandoned which expressed that idea unequivocally for other language which does not? Indeed, the language of the Revision cannot be made to express that idea by any proper rules of construction. It provides that the lien shall attach from the commencement of the building. According to the construction contended for by the intervenors, it does not necessarily attach from the commencement of the building. It does so only when the commencement of the particular work in question happens to coincide with the commencement of the building. According to that construction, the words "building" and "erection" have no force in the statute. But the rules of construction require that some force shall be given to every word, if it can be done consistently.

The idea that the mechanic's lien attaches only from the commencement of his particular work, is wrought out through the supposition that the word "improvement," as used in the statute, denotes the several distinct and successive jobs of work performed by the different mechanics. But this construction is precluded by the use of the word "other" before "improvement." The lien is to attach from the commencement of "the building, erection, or other improvement." The statute implies that a building is an improvement, and that an erection is an improvement, and that there may be others still. We understand by "other improvement" the result of mechanical labor or materials furnished other than buildings or erections upon real estate.

But, suppose "other improvement" to mean the different parts of a building. It follows that a building is one improvement, its walls another, and its doors a third. But the walls of a building are not *other* than the building. The words "other improvement," as used in the statute, cannot properly mean either buildings, erections or constituent parts thereof.

Besides, a constituent part of a thing is not an improvement of the thing, in any proper sense of the word. How can we say that the walls of a house are an improvement of the house? The house could have no antecedent existence. Ties and rails are not an improvement of a railroad for the same

reason. Yet, whatever is an improvement, is an improvement of something. A house is an improvement of the premises on which it is situated. A railroad is an improvement of the country which is benefitted thereby. That which enters into the original construction of a house or a railroad is a part of an improvement, and nothing more.

That the construction contended for by the intervenors is not correct, may he determined from sections 1846 and 1855 of the Revision. The former provides that the mechanic. shall have a prior lien upon " the building, erection or improvement," and the latter provides that in enforcing his lien he may sell and remove the building, erection or improvement. If the word " improvement," as here used, does not mean some entire thing, but means the mechanic's particular work which has entered into the construction of the thing, the result is that the bricklayer who has laid the brick of a house has a lien upon the brick, the plasterer upon the plastering, the paper-hanger upon the paper, the painter upon the paint, the frescoer upon the frescoes; and the remedy provided by statute for each one of the mechanics is, that he may sell and remove his "improvement." According to this theory, ties furnished for a railroad are an improvement; the dirt shoveled by a laborer in the construction of the road is an improvement; an excavation, or part of an excavation made by a laborer in the construction of the road is an improvement; the lien of each (as a prior lien) is restricted to his improvement, and his remedy is restricted to selling and removing it. It is unnecessary to say that such a lien is no security at all. The statute, by this construction, is converted into a mockery and a cheat.

But it is said that it would be unjust to the mortgagee who has taken a mortgage upon a partially constructed building; erection, or other improvement, to make his mortgage subject to mechanics' liens for work subsequently commenced. It is argued that the mechanic may always know what incumbrances rest upon the property by mortgage, but that the mortgagee cannot know what incumbrances may come to rest upon the property by mechanics' liens. To this it may be said that, where a person takes a mortgage upon a partially

constructed building, erection, or other improvement, the possibility of mechanics' liens attaching upon the property is distinctly foreshadowed by the condition of the property. It is true the mortgagee cannot know the amount. He cannot know, indeed, whether the building, erection or other improvement will be completed according to the plan of the mortgagor at the time the mortgage is executed. But we think that the mortgagee may properly be required to rely upon the good faith and prudence of the person whom he elects to make his mortgagor. Furthermore, the increased value of the security may be presumed to be somewhat in proportion to the expense incurred upon the property. Without denying that the statute, as we construe it, may sometimes work a hardship, the danger to be apprehended is not such as to exert much influence in the construction of the statute, the language employed being almost, if not entirely, free from ambiguity.

Another objection urged against this construction of the statute is, that it may be impracticable oftentimes for the mortgagee to determine whether a building, erection or other improvement, has or has not been commenced upon the premises. It has been asked in argument whether a mortgagee of a railroad shall take notice that the construction of the road has been commenced if only a shovelful of dirt has been thrown. This objection, whether great or small, applies equally to the construction contended for by the intervenors. If the statute should not be construed as requiring notice to be taken of the commencement of a railroad because that may consist in the throwing of a shovelful of dirt, it should not, for the same reason, be understood as requiring that notice should be taken of the commencement of any particular job of work upon the railroad for that, too, must be equally small.

It is objected, further, that a building, erection or other improvement, when partially constructed, is sometimes abandoned, and the work is afterward resumed. If, in the meantime, a mortgage has been executed upon the premises, the mortgagee having no reason to suppose that the work would

be resumed, he might, it is said, be virtually deprived of his security without fault or negligence on his part.

What should be the rule in such a case it is not proper for us now to determine. It is sufficient for us to say that we do not think that such a case would involve any great difficulty. If a partially erected structure is in a condition to be completed, we doubt whether the mortgagee would be justified in presuming that a cessation of work, however long continued, was an absolute abandonment.

In regard to the policy of the statute as we construe it, this may be said: It is not desirable that the execution of a mortgage upon land upon which a building or other improvement is in process of construction should arrest the work and prevent its completion. Both mortgagor and mortgagee are interested in its completion. Without it, the money already expended must, ordinarily, to a great extent be lost. Take the present case as illustration. The intervenors are holders of mortgage bonds upon a road, sixteen miles of which had been graded at the time the mortgage was made. The value of their security depended upon the further construction of the road. They foresaw that work and materials must be furnished by somebody or nothing could be realized from what had been done; yet the construction of the statute which they contend for would require the mortgagor to keep a fund on hand for the daily payment of the laborers, and material-men, or that the work and materials should be furnished, practically, without security.

The case of *Getchell & Tichenor v. Allen*, 34 Iowa, 559, is relied upon by the intervenors as sustaining their position; but such is not properly its effect. The point decided in that case was, that a mechanic's lien for work in making an addition to a house was not paramount to a prior mortgage upon the work. BECK, J, said, in remarking upon the statute: "The word *improvement*, as here used, does not mean an addition to or betterment of a building, but is applied to some independent erection on the land." That view is in entire harmony with this opinion, and tends to support it.

In *Davis v. Bisland*, 18 Wallace, 659, a question arose as

to the priority of a mechanic's lien over a prior recorded mortgage upon a building, the mortgage having been executed after the building was commenced. The statute under which the question arose is substantially like ours, and is in the following words: "The liens for work or labor done or things furnished, as specified in this act, shall have priority in the order of filing the accounts thereof as aforesaid, and shall be preferred to all other liens and incumbrances which may be attached to or upon the building, erection or other improvement, and to the land upon which the same is situated, to the extent aforesaid, or either of them, made subsequent to the commencement of said building, erection or other improvement."

BRADLEY, J., said: "The liens secured to mechanics and material men, have precedence over all other incumbrances put upon the property after the commencement of the building; and this is right. Why should a purchaser or lender have the benefit of the labor or materials which go into the property and give it its existence and value? At all events, the law is clear."

In *Dubois v. Wilson*, 21 Mo., 214; *American Fire Ins. Co. v. Pringle*, 2 S. & R., 138; and *Wells v. Canton Co.*, 3 Mo., 234, a mechanic's lien was held to be paramount to a mortgage recorded before the work was done, but after the commencement of the building.

We are of the opinion that the plaintiff's lien is paramount to the intervenors'.

The case will be remanded with directions to enter a decree in accordance with this opinion, or, if the plaintiffs prefer, such decree may be entered in this court.

REVERSED.